# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

CASE NO: 1:22-cv-23260-CMA

VIKTORIIA POPOVA and DARA LAMDEN, on behalf
of themselves and all others similarly situated,

    Plaintiffs,

v.

INVESTMENTS 41 LLC d/b/a BLACK MARKET
MIAMI, and ERICK PASSO, individually,

    Defendants.
_____/

## PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)

Plaintiffs, VIKTORIIA POPOVA ("Popova") and DARA LAMDEN ("Lamden") (Popova and Lamden collectively ("Plaintiffs"), respectfully move, pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"), to conditionally certify this collective action, as follows:

### I. INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants operate the Black Market Miami restaurant and bar located at 168 SE 1st Street, Store 1A, Miami, FL 33131. D.E. 1. During the past 3 years Defendants have employed dozens of Servers and Bartenders who perform substantially similar duties at the restaurant. *Id.* These Servers and Bartenders, however, have been denied applicable federal minimum wages and tips during various workweeks. *Id.* On October 7, 2022, Popova filed her collective/class action lawsuit seeking to recover all minimum wages that were unlawfully withheld from herself and other similarly situated Servers and Bartenders. D.E. 1. On December 16, 2022, Popova and Lamden filed their Amended Class/Collective Action Complaint for Damages and Demand for Jury Trial. D.E. 25. Plaintiffs also filed their Consents to Sue Under the FLSA on December 16, 2022. *See* D.E. 26; D.E 27. Plaintiffs now move to conditionally certify the following collectives of similarly situated Servers and Bartenders:

**Tip Notice Collective:**    **All Servers and Bartenders who worked for Defendants during the three (3) years preceding this lawsuit who did not receive proper notice from Defendants that they would be taking a tip credit toward the required federal minimum wage.**

| | |
|---|---|
| **80/20 Collective:** | **All Servers and Bartenders who worked for Defendants during the three (3) years preceding this lawsuit who were required to spend more than 20% of any workweek performing non-tipped duties and side work and did not receive the full applicable minimum wage for this work.** |
| **Substantial Side Work Collective:** | **All Servers and Bartenders who worked for Defendants on or after December 28, 2021, who were required to spend more than thirty (30) continuous minutes on non-tipped duties and side work during any shift.** |
| **Tip Disgorgement Collective:** | **All Servers and Bartenders who worked for Defendants after March 23, 2018, who were required to share any of their tips with Supervisors, Managers, or Team Leaders.** |

Plaintiffs surpass the lenient burden for conditional certification with evidence demonstrating all Servers and Bartenders are similarly situated because they: (i) performed substantially similar duties within the past 3 years; (ii) shared the same supervisors and managers; (iii) all worked at the same restaurant location; (iv) were all tipped employees with the same job titles; and (v) were all subject to the same scheduling and wage and hour policies during the applicable statute of limitations. Plaintiffs also provide ample evidence that other Servers and Bartenders are interested in joining and would opt-in if given notice. Given the lenient burden under 29 U.S.C. § 216(b), Plaintiffs' evidence warrants an Order conditionally certifying this case and sending notice to all Servers and Bartenders who were employed by Defendants at the same restaurant during the previous 3 years. *See Van Lehn, et. al. v. Uncle Al's Sports Café Sunrise, Inc., et. al.*, S.D. Fla. Case No. 0:22-cv-61628-AHS at D.E. 28 (S.D. Fla. Nov. 15, 2022) (Singhal, J.) (granting conditional certification of FLSA collective action comprised of servers and bartenders and naming Mr. Richards and Mr. Blumstein counsel for the collectives); *Conrey, et. al. v. Beach Boys of Ft. Lauderdale, LLC*, S.D. Fla. Case No. 0:22-cv-60843-HUNT at D.E. 47 (S.D. Fla. July 8, 2022) (Hunt, M.J.) (same); *Grajeda, et. al. v. Verified Moving Pros, LLC, et. al.*, S.D. Fla. Case No. 0:22-cv-61471-WPD at D.E. 18 (S.D. Fla. Sept. 22, 2022) (Dimitrouleas, J) (same); *Didoni v. Columbus Restaurant, LLC*, 327 F.R.D. 475 (S.D. Fla. 2018) (Altonaga, J.) (granting conditional certification for restaurant workers at single location); *Compere v. Nusret Miami, LLC*, 391 F.Supp.3d 1197 (S.D. Fla. 2019) (granting conditional certification for restaurant workers); *Campbell v. Pincher's Beach Bar Grill Inc.*, 2016 WL 3626219 (M.D. Fla. 2016) (granting conditional certification for servers and bartenders at single location); *Stuven v. Texas*

*de Brazil (Tampa) Corp.*, 2013 WL 610651 (M.D. Fla. 2013) (granting conditional certification for servers and bartenders); *Santiago v. Mid-South Painting, Inc.*, 2011 WL 3418252, at *2 (S.D. Fla. 2011) (Judge Altonaga granting conditional certification for employees with different job titles).

II.     FACTS

Popova worked for Defendants as a Server from on or about January 1, 2022, until on or about August 14, 2022. *See* Declaration of Viktoriia Popova attached as **Exhibit A**. During Popova's employment, Defendant, Passo, was the restaurant's owner and oversaw its operations. *Id.* at ¶¶ 21-24. Popova and all other Servers and Bartenders were supervised by Guillermo Lugo. *Id.* at ¶¶ 31-32. When Defendants hired Popova, they failed to provide her with sufficient notice of the tip credit under federal and Florida law. *Id.* at ¶ 5-7; 33. Popova's primary duties and responsibilities during her employment period were to serve customers food and drinks in the restaurant and/or bar area, engage with customers to enhance their overall dining experience and perform side work. *Id.* at ¶ 14. Popova performed substantially similar duties and side work as all Servers and Bartenders. *Id.* at ¶ 16. For some opening shifts, Defendants required Popova and every other Server and Bartender to show up to work at around 12pm; however, the restaurant does not typically open the public until 1pm. *Id.* at ¶ 17-19. During the first hour of opening shifts, Popova and all other similarly situated individuals could not earn tips because Defendants were closed to the public. *Id.* However, Defendants claimed a tip credit for all Servers and Bartenders who worked opening shifts during the previous three (3) years, regardless of whether they were required to spend substantial time on side work and non-tipped duties. *Id.* Defendants also required Popova to regularly spend more than 20% of each workweek performing side work and non-tipped duties. *Id.* at ¶¶ 27-28. In addition, Defendants required Popova to share her tips with Supervisors, Managers and/or Team Leads. *Id.* at ¶ 11. Popova has spoken with various Servers and Bartenders who have voiced interest in seeking unpaid wages from Defendants based on these violations. *Id.* at ¶¶ 34-35; 19. However, on various occasions, Defendants have retaliated against individuals who have sought unpaid wages. *Id.* Although other Servers and Bartenders fear retaliation from Defendants, Popova is certain that many similarly situated individuals will join if they receive notice of this collective action. *Id.*

Lamden worked as a Server and Bartender at the same restaurant from on or about February 1, 2022, through on or about September 29, 2022. *See* Declaration of Dara Lamden attached as

**Exhibit B**. Passo was an owner of the restaurant and was otherwise responsible for paying wages to Lamden and other Servers and Bartenders during Lamden's employment period. *Id.* at ¶ 27. Lamden and all other Servers and Bartenders were supervised by Guillermo Lugo. *Id.* at ¶¶ 34-35. According to Lamden, Servers and Bartenders perform substantially similar duties and responsibilities – serving customers food and drinks, engaging with customers and performing a substantial amount of side work. *Id*. at ¶¶ 16-25. Lamden also worked opening shifts during her employment period. *Id.* at ¶¶ 21-24. During these opening shifts, Lamden and dozens of similarly situated Servers and Bartenders were required to perform side work and non-tipped duties for their first hour of work; however, these individuals could not earn tips because the restaurant was closed to the public. *Id.* at ¶ 21-25. Defendants claimed a tip credit for Lamden and every other Server and Bartender for every shift, including opening shifts and hour-long periods of time when Servers and Bartenders could not earn tips. *Id.* Lamden regularly spent more than 20% of the workweek performing side work and non-tipped duties. *Id.* at ¶¶ 30-32. Defendants required Lamden to share her tips with Supervisors, Managers and/or Team Leads during her employment period and failed to provide her with adequate notice of taking a tip credit when Defendants hired her. *Id.* at ¶¶ 4-5; 12-13. Defendants never provided Lamden or any other Server or Bartender with statutory tip credit notice until Lamden's last week of work – **after** Defendants received pre-suit notice of the claims alleged by Popova. *Id.* at ¶¶ 4-5; 36. Lamden has spoken with several current and former Servers and Bartenders who have voiced interest in joining the lawsuit, including but not limited to Reyner Rodriguez. *Id.* at ¶¶ 37-38. However, some of these individuals fear retaliation and the economic impact of being "blacklisted" from the restaurant industry and/or being fired by Defendants. *Id.* Lamden is certain that additional Servers and Bartenders will join if they are provided notice of the lawsuit. *Id.*

### III.   MEMORANDUM OF LAW

#### A.   Motion for Conditional Certification of FLSA Collective Action

Congress enacted the FLSA to ensure all able-bodied working men and women a fair day's pay for their work. *Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1172 (11th Cir. 2021). The FLSA permits an employee to bring a collective action on behalf of himself or herself, and for "other employees similarly situated." *See* 29 U.S.C. § 216(b)*; Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001). In the interest of judicial economy, district courts have discretionary power to authorize the sending of notice to potential class members. *See Hoffman-*

*La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989). To be bound by the case's outcome, an employee must opt into a collective action by filing a written consent to join the action. *Albritton v. Cagles, Inc.*, 508 F. 3d 1012 (11th Cir. 2007). To facilitate notice to similarly situated employees, district courts have authority to compel employers to provide the names and addresses of potential Plaintiffs. *Hoffman-La Roche Inc.*, 493 U.S. at 170-71. This includes sending court-authorized notice to potential opt-in Plaintiffs regarding the lawsuit and their statutory right to join. *Id*. The authority to supervise notice derives from the broad discretionary power to manage the judicial process. *Id.* at 169-72.

### B. The Two-Tiered Approach to Conditional Certification

"The FLSA speaks in broad strokes, and does not specify the details of how collective actions are to proceed, and thus, the management of these actions has been left to the discretion of court." *Hannah v. Huntington National Bank*, 2020 WL 2571898 at *5 (N.D. Ill. 2020) (citing *Hoffman-La Roche Inc.*, 493 U.S. at 170-71. To grant conditional certification of a collective action, the 11th Circuit requires a finding that there are other employees who: (1) are **similarly situated** with regard to their job requirements and pay provisions; and (2) **desire to opt-in** to the case. *See Dybach v. Fla. Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991) (emphasis added); *see also Hannah*, 2020 WL 2571898 at *5 (explaining that "most courts . . . have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action") (citing 7B Charles Alan Wright & Miller, *Federal Practice and Procedure § 1807*, (3d ed. 2020)).

The first step of conditional certification under the FLSA is lenient, and typically involves conditionally certifying a collective for notice purposes to get word out about possibly joining the case. *See Didoni*, 327 F.R.D. at 479 (quoting *Hipp.*, 252 F.3d at 1218) ("Because the court has minimal evidence at the first step of conditional certification, the determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class"). At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members. *See Didoni*, 327 F.R.D. at 478-479; *see also Santiago v. Mid-South Painting, Inc.*, 2011 WL 3418252, at *2 (S.D. Fla. Aug. 3, 2011) (Altonaga, J). Courts commonly grant conditional certification in FLSA restaurant cases where tipped employees provide evidence of unlawful pay policies. *Id., see also Brock v. 50 Eggs, Inc.*, 2016 WL 10933025 at, *2 (S.D. Fla.

5

2016) (granting conditional certification even where restaurant denied that it imposed unlawful policy on servers); *Didoni*, 327 F.R.D. 475 (granting conditional certification for servers and bartenders); *Negron v. Red Crab FL, LLC*, 2022 WL 4547935, at *3 (S.D. Fla. Sept. 29, 2022) (granting conditional certification for tipped employees who were required to perform work that did not generate tips because restaurant was closed to the public); *Rosell v. VMSB, LLC*, 2020 WL 7767879, at *2-3 (S.D. Fla. July 7, 2020) (granting conditional certification for servers and bartenders who submitted evidence that they were not provided proper notice of Defendant's intent to claim a tip credit or regarding requirements for the tip pool).

    C.    **The Type of Evidence Required to Show Employees are Similarly Situated Under the Lenient Conditional Certification Standard**

Courts in the Southern District of Florida commonly consider the following five factors at the conditional-certification stage to determine whether individuals are similarly situated: (1) Whether the plaintiffs held the same job title; (2) Whether they worked in the same geographic location; (3) Whether the alleged violations occurred during the same time period; (4) Whether plaintiffs were subjected to the same policies and practices and whether the policies and practices were established in the same manner and by the same decision maker; and (5) The degree to which the actions constituting the claimed violations are similar. *See Alequin*, 2013 WL 3939373, at *4.

Plaintiffs need show only 'that their positions are similar, not identical," to the position held by the putative class members. *McClean*, 2018 WL 8578016, at *2. The similarly situated requirement of the FLSA within 29 U.S.C. § 216(b) is more elastic and less stringent than the requirements of Rule 23 (as to class actions) Rule 30 (as to joinder) and Rule 42 (as to severance). *See Id. citing Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996). The Plaintiff must show only a "reasonable basis" for his claim that there are other similarly situated employees. *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1260-61 (11th Cir. 2008).

While some courts require a Plaintiff to produce "substantial allegations that the putative class members were together victims of a single decision, policy, or plan," *Thiessen v. Gen. Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001), the Eleventh Circuit has held that "a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)." *Grayson v. K-Mart Corp.*, 79 F.3d at 1096. The fact that there may be "variations in positions and job functions" among the proposed class "does not,

at this preliminary stage, change the result." *See Valerio v. RNC Industries, LLC*, 314 F.R.D. 61, 73 (E.D.N.Y. 2016); *Santiago*, 2011 WL 3418252, at *4 (Altonaga, J).

    D.    **Violations of the Fair Labor Standards Act**

        i.    **Tip Notice Requirements**

An employer is required to comply with Section 203(m) of the FLSA before it may take a tip credit under federal law. *See Driver v. AppleIllinois,* LLC, 917 F.Supp.2d 793 (N.D. Ill. 2013). There are 4 eligibility requirements that an employer must meet in order to claim the tip credit: (1) "the cash wage paid to such employee… shall be not less than" the applicable tipped hourly rate; (2) the additional amount received in tips by the employee must be at least equal to the difference between the hourly rate paid and the full minimum wage; (3) the employee must have "been informed by the employer of the provisions of" Section 203(m); and (4) "all tips received by such employee have been retained by the employee," unless the employee participates in a valid tip pool. *See* 29 U.S.C. 203(m); *see also Vega v. Ya Guan USA, LLC,* 2020 WL 13413699, at *2 (S.D. Fla. Sept. 23, 2020). The burden is on the employer to show that it has complied with all of the requirements of Section 203(m). *See Vancamper v. Rental World, Inc.*, 2011 WL 1230805 at *5 (M.D. Fla. 2011). If an employer does not satisfy all of the requirements, then it cannot take the tip credit and must pay full minimum wage. *See* U.S. Dept. of Labor Field Operations Handbook 30d01(b) ("Where an employer does not strictly observe the [tip credit] provisions of [203(m)], no tip credit may be claimed and the employees are entitled to receive the full cash [minimum wage], in addition to any tips they may have received")[1]; *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3rd Cir. 1994); *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979).

The Department of Labor has promulgated regulations concerning an employer's ability to take a tip credit. Pursuant to 29 C.F.R. § 531.59(b):

> Pursuant to Section 3(m)(2)(A), an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of Section 3(m)(2)(A) of the Act, i.e.: The amount of the cash wage that is to be paid to the tipped employee by the employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may

---

[1] Although the Field Operations Handbook is not entitled to *Chevron* deference and does not have the force of law, courts may still rely upon it as persuasive authority. *See Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251, 1255 (11th Cir. 2001).

> not exceed the value of the tips actually received by the employee; that all tips received by the tipped employee must be retained by the employee except for a tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of this section.

29 C.F.R. § 531.59(b).

Notably, even if an FLSA plaintiff ultimately receives more than the mandated minimum wage when including tips, the plaintiff may still recover where an employer is not entitled to claim a tip credit for failure to provide adequate notice. *See Hussein v. Jun-Yan, LLC*, 502 F.Supp.3d 1366 (E.D. Wis. 2020).

### ii. 80/20 Rule for Tipped Employees

An employer may only take a tip credit for work performed by a tipped employee that is part of the employee's tipped occupation. *See* 29 C.F.R. § 531.56(f). In 1988, the Department of Labor ("DOL") issued guidance known as the 80/20 rule which elaborated on statements from previous DOL opinion letters concerning the type of work that may be performed by tipped employees. *See, e.g., Restaurant Law Center v. U.S. Dept. of Labor*, 2022 WL 526243 (W.D. Tex. 2022) (denying restaurant association's motion for preliminary injunction). This 80/20 rule allowed a tip credit for time spent on duties related to the tipped occupation, even if those duties were not directly related to tip-generating activities, however, it limited allowance for this type of work to up to 20% of the employee's time in a workweek. *Id.*

The 80/20 rule remained largely undisturbed for nearly 30 years until 2018 when the DOL rescinded the rule through new guidance. *See* WHD Opinion Letter FLSA 2018-27 (Nov. 8, 2018); *see, also,* WHD FOH Rev. 767 (Feb. 15, 2019). Notably, "the recission was 'met with near-universal rejection' in court" and in September 2021, the Eleventh Circuit Court of Appeals affirmed the applicability of the 80/20 rule. *See, e.g., Restaurant Law Center*, 2022 WL 526243 at *2; *Rafferty*, 13 F.4th at 1189-90. In December 2021, just three months after *Rafferty* was decided, the DOL codified the 80/20 rule into the regulations and limited the various types of work for which an employer can take a tip credit. *See* 29 C.F.R. § 531.56. While the 80/20 rule has been consistently followed by the Courts since 1988, the express provisions of 29 C.F.R. § 531.56(f)(4)(ii) went into effect on December 28, 2021. *See Restaurant Law Center*, 2022 WL 526243 at *2 *citing* 86 Fed. Reg. 60114.

Under the applicable rule there are 2 categories of work considered to be part of an employee's tipped occupation: (i) work that produces tips ("tip-producing work"); and (ii) work that directly supports tip producing work, if the directly supporting work is not performed for a substantial amount of time (hereinafter referred to synonymously as "side work"). *See* 29 C.F.R. § 531.56(f)(1)(i)-(ii). Tip-producing work is any work performed by a tipped employee that provides service to customers for which the tipped employee receives tips. *See* 29 C.F.R. § 531.56(f)(2)(i). Directly supporting work (i.e. "side work") is work performed by a tipped employee in preparation of or to otherwise assist tip-producing customer service. 29 C.F.R. § 531.56(f)(3)(i).

An employee has performed side work for a substantial amount of time if:

(i) the directly supporting work exceeds a 20 percent workweek tolerance, which is calculated by determining 20 percent of the hours in the workweek for which the employer has taken a tip credit. The employer cannot take a tip credit for any time spent on directly supporting work that exceeds the 20 percent tolerance; or

(ii) the directly supporting work exceeds a continuous period of 30 minutes.

*See* 29 C.F.R. § 531.56(f)(4)(i)-(ii).

### iii. The FLSA Expressly Prohibits Employers from Retaining Tips

On March 23, 2018, Congress passed the Consolidated Appropriations Act of 2018 (CAA), which amended Section 203(m) of the tip provisions of the FLSA to add the following language: "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." The CAA also amended another FLSA provision – Section 216(b) – to state that "[a]ny employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

The Department of Labor has promulgated regulations concerning an employer's participation in a tip sharing arrangement. Pursuant to 29 C.F.R. § 531.54:

> Section 3(m)(2)(B) expressly prohibits employers from requiring employees to share tips with managers or supervisors, as defined in § 531.52(b)(2), **or employers, as defined in 29 U.S.C. § 203(d)**.

9

29 C.F.R. § 531.54(b)(1).

Notably, even where an employer does not take a tip credit under the law, it is still prohibited from retaining any portion of an employee's tips. *See* 29 U.S.C. § 203(m)(2)(B).

## IV. ARGUMENT: PLAINTIFFS SURPASS THE LENIENT BURDEN FOR CONDITIONAL CERTIFICATION

### A. Plaintiffs are Similarly Situated

In support of this motion, Plaintiffs have provided declarations as well as evidence in the form of pay records and other documents which show that Defendants subjected their Servers and Bartenders to a slew of unlawful and company-wide policies which violated their right to be paid proper minimum wages. *See* Exhibits A-B. The collectives are limited in scope to all current and former Servers and Bartenders who worked at the same restaurant location within the previous 3 years. These Servers and Bartenders had the same managers and supervisors, and Plaintiffs only seek to represent individuals with the same job title as them. *See* Exhibit A, at ¶¶ 31-32; Exhibit B, at ¶¶ 34-35. Moreover, Passo owned and operated the restaurant and implemented the unlawful pay policies at issue. *See* Exhibit A, at ¶¶21-24; Exhibit B, at ¶27. After December 28, 2021, Defendants required Servers and Bartenders to spend more than 30 continuous minutes performing non-tipped duties and side work during their shifts. *See* Exhibit A, at ¶¶ 17-20; Exhibit B, at ¶¶ 21-25; 29. Much of this work was performed at times when Servers and Bartenders could not earn tips because the restaurant was closed to the public. *Id.* Importantly, Plaintiffs both calculate that they had to spend at least 20-30 percent of the workweek performing side work and non-tipped duties. *See* Exhibit A, at ¶¶ 27-28; Exhibit B, at ¶¶ 30-31. Furthermore, Defendants did not provide Servers or Bartenders written or verbal notice of their intent to claim the tip credit until ***after*** Defendants received statutory notice of wage and hour violations from Popova.[2] *See* Exhibit B, at ¶¶ 4-7; 36. Similarly, Defendants required Plaintiffs to share their tips with Managers, Supervisors and/or Team Leads. *See* Exhibit A, at ¶¶ 11; Exhibit B, at ¶¶ 12-13. These factors and employment policies heavily weigh in favor of conditional certification. *See Wintjen v. Denny's, Inc.*, 2021 WL 5370047 at *16 (W.D. Pa. Nov. 18, 2021) (Granting conditional certification of 80/20 collective for servers who were required to spend an impermissible amount of time performing side work); *Stuven.*, 2013 WL 610651 at *4 ("At this stage of the litigation, what the employee serves – food

---

[2] To the extent that Defendants failed to provide tip notice to Servers and Bartenders, "the actions constituting the claimed violations" are identical. *See Didoni*, 327 F.R.D. at 480.

or beverages – is a minor distinction"); *Alequin*, 2013 WL 3939373, at *5 (holding that a similar geographic location weighs in favor of conditional certification); *Hipp*, 252 F.3d at 1219 (rejecting employer's contention that each potential class member was unique and required an individual analysis of their working conditions); *Peña v. Handy Wash, Inc.*, 28 F. Supp. 1289,1300 (S.D. Fla. 2014) ("The Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make creditability determination" at the conditional certification stage); *Didoni*, 327 F.R.D. at 480 (conditional certification of FLSA claims appropriate when restaurant withheld a portion of gratuities from servers); *Van Lehn,* S.D. Fla. Case No. 0:22-cv-61628-AHS at D.E. 28 (granting conditional certification for similar 80/20 and substantial side work collectives).

In *Biller*, the Court granted conditional certification for an FLSA collective comprised of Servers who were required to contribute tips to a mandatory tip pool that was later distributed to managers. *Biller v. Café Luna of Naples, Inc.*, 2017 WL 11633268, at *3-4 (M.D. Fla. Feb. 7, 2017). The Court's analysis focused on the plaintiff's testimony that Defendants: (i) failed to provide him written or verbal notice of the tip credit policy; (ii) failed to display any posters explaining the policy; and (iii) allowed managers to receive tips from the tip pool. *Id.* The defendants in *Biller* claimed that they did provide the Servers with notice of the tip credit and had provided written information concerning the tip credit in an orientation session, and that the managers did not participate in the tip pools. *Id.* The Court ultimately granted conditional certification and found that these were all disputed issues of material fact that could not defeat certification. *Id.*

In *Negron*, 2022 WL 4547935, at *2, restaurant workers sought an order conditionally certifying a proposed collective of individuals who were required to clean after-hours for a tip credit wage. *Id.* The Opt-In Plaintiffs explained in their declarations that "twelve or more servers would regularly attend mandatory deep-cleaning meetings." *Id.* The Court granted the Plaintiffs' Motion and held that the Plaintiffs demonstrated a reasonable basis for claiming that other similarly situated employees existed because, in part, they all were subject to the same policies and procedures. *Id.* at *3 (citing *Alequin*, at *6 (Rosenbaum, J.)).

In *Rosell*, Severs and Bartenders sought conditional certification and contended that the Defendant violated the FLSA because: (1) they were required to participate in a tip pool which included management; and (2) they were not provided with proper notice of Defendant's intent to

claim the tip credit or regarding the requirements for a tip pool, as required by 29 U.S.C. ¶ 203(m). *Id.* at *2. The Court found that the Plaintiffs were similarly situated and explained that:

> The record submitted on the motion, together with the presence of two additional opt in class members, sets forth a tangible and sufficient showing that the proposed class exists, that there are additional employees who are similarly situated with respect to their job requirements and pay provisions, and that these additional employees may wish to opt in if the have notice of the action . . . Specifically, the lead Plaintiff's declaration attests that 'it was common knowledge that managers and the restaurant itself kept part of our tips' and 'managers would place themselves on the schedule under the title of 'server' even though they were not serving tables, so that they would be included in getting a share of the tip pool.' And he further attested that he knew of at least 15 servers and bartenders who were paid under a similar tip credit arrangement. This record evidence is specific and material enough to satisfy the first threshold Plaintiffs must show for conditional certification.

*Id.* at *3.[3]

Like the Plaintiffs in *Biller, Negron* and *Roswell*, the Plaintiffs in this case have submitted evidence of common and widespread employment policies that impacted all Servers and Bartenders who were required to participate in the same tipping system as the same restaurant. *See* Exhibit A; Exhibit B. These uniform and unlawful policies were similar to the policies in *Biller, Negron* and *Roswell* and demonstrate that Servers and Bartenders are similarly situated. These unlawful practices include Defendants' practice of allowing Supervisors, Managers and/or Team Leads to take tips, Defendants' failure to provide Servers and Bartenders with tip credit notice and Defendants' practice of requiring Servers and Bartenders to perform side work for a full hour before the restaurant was open to the public while being paid a tip credit wage. *See* Exhibit A; Exhibit B. Any one of these common policies or practices, standing alone, would merit granting this Motion. Accordingly, Plaintiffs respectfully request for the Court to grant this Motion.

### B. Other Similarly Situated Employees Desire to Opt-in to the Collectives

With respect to the second requirement for conditionally certifying a class, an employee must show that there are other employees who would opt-in, if given notice. *See Mackenzie v.*

---

[3] The Court also explained that explained that: **"… we acknowledge the established policy of restaurants like Defendant's that typically require multiple bartenders and servers to be paid under the same tipping system."** *Id.* at *3 (emphasis added).

*Kindred Hosps. E., LLC*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003). "The existence of just **one** other co-worker who desires to join in is sufficient to raise the Plaintiff's contention beyond one of pure speculation . . . [c]ourts in this district have conditionally certified classes with as few as two affidavits from potential Plaintiffs." *See Garcia v. J&J, Inc.*, 2019 WL 3457613 at *3 (S.D. Fla. 2019) (quoting *Rojas v. Garda CL Se., Inc.*, 297 F.R.D. 669, 677 (S.D. Fla. 2013)); *Benjamin v. Right Path Behavioral Health Servs. LLC*, 2018 WL 922350, at *3 (M.D. Fla. 2018) ("Considering the fairly lenient standard, the two opt-in plaintiffs, and the three declarations, the Court finds that the Plaintiff has satisfied his burden of demonstrating a reasonable basis for his claims that there are other similarly situated [employees]); *Wynder v. Applied Card Sys., Inc.*, 2009 WL 3255585 (S.D. Fla. 2009) (granting conditional certification based on two affidavits: one of the single-named plaintiff and one opt-in plaintiff); *Compere*, 391 F.Supp.3d 1197 (granting conditional certification where Plaintiff's affidavit and one other affidavit claimed that other similarly situated individuals would opt in to the action); *Wickles v. Premier Plumbing and Leak, LLC*, 2020 WL 12309029, at *2 (N.D. Fla. Oct. 23, 2020) (Hinkle, J) ("Usually consent notices *or* the affidavits of employees who will opt in support a finding at the first stage. But even one or two co-worker affidavits can elevate a plaintiff's allegations beyond mere speculation.") (internal citations omitted); *Maar, et. al. v. Beall's Inc.*, Case No. 2:16-cv-14121-DMM, D.E. 47 at 6 (S.D. Fla. Nov. 23, 2016) (Middlebrooks, J.) (interest of others to join demonstrated when declarations identified others who were subject to the same classification policy).

In *Santiago*, the Plaintiff moved for conditional certification and alleged that a common policy implemented by the Defendants led to overtime wage violations. 2011 WL 3418252, at *4-5. In support of his Motion for Conditional Certification, the Plaintiff only attached 1 affidavit – from the Plaintiff himself – and deposition transcripts which showed that Defendants did, indeed, implement a common pay policy. *Id.* This Honorable Court granted the Plaintiff's Motion for Conditional Certification, despite the existence of only one (1) affidavit and ***no*** opt-in Plaintiffs primarily because "a common payroll policy or scheme is sufficient to establish there are other employees desiring to opt-in." *Id.* (quoting *Mooney v. Advanced Disposal Servs.*, No. 3:07-cv-1018-WKW, 2008 WL 3843550, at *2 (M.D. Ala. Aug.14, 2008)); (citing *Tucker v. Labor leasing, Inc.*, 872 F.Supp.941, 948 (M.D. Fla. 1994)).

In *Cummings*, the Court granted conditional certification when the Plaintiff identified two co-workers interested in joining and a third who opted into the lawsuit. 2021 WL 8533031, at *3.

The Court held that a Plaintiff shows that others desire to opt-in beyond the point of speculation where "at least one co-worker desires to join the suit." *Id.* The Court ultimately rejected Defense Counsel's argument that conditional certification was inappropriate due to an insufficient number of opt-in Plaintiffs because the declarations were detailed and not conclusory. *Id.*

Here, Plaintiffs' lengthy declarations provide substantial evidence for the Court to find that similarly situated individuals desire to join.[4] *See* Exhibit A; Exhibit B. Plaintiffs' claim that they are aware of dozens of other current and former employees who wish to opt-in to this case, but who, out of fear of retaliation, are hesitant to join until Court-authorized notice is provided. Exhibit A at ¶¶ 34-35; Exhibit B at ¶¶ 37-38. These individuals believe that Passo will "blacklist" them from the restaurant industry if they participate in the litigation. *Id.*[5] Nevertheless, Lamden has specifically identified another employee, Reyner Rodriguez, who she believes will join this lawsuit, and both Plaintiffs are "certain" that dozens of additional Servers and Bartenders will Opt-in if given notice. *See* Exhibit A, at ¶ 35; Exhibit B, at ¶ 38; *see also Didoni*, 327 F.R.D. at 479-480 (Judge Altonaga holding that Servers demonstrated that others desired to join when Plaintiffs attested to personal knowledge of 30 to 40 individuals who would want to participate in the lawsuit if they received notice). In addition, Plaintiffs and all other Servers and Bartenders were subjected to several common and unlawful pay policies. *See* Exhibit A; Exhibit B; *Supra* § II, at pp. 3-4. Accordingly, because Plaintiffs have shown that these policies affect all Servers and Bartenders in a single restaurant location, that they held the same job titles, that they had the same managers and that other similarly situated Servers and Bartenders wish to join, conditional certification is proper. *See Santiago*, 2011 WL 3418252, at *4 (Altonaga, J.) ( granting conditional certification with only 1 Plaintiff and deposition testimony because "… courts within this circuit have determined that evidence of a common payroll policy or scheme is sufficient to establish there are other employees desiring to opt-in") (citations omitted); *Webb v. RMS Properties, Inc.*, 2019 WL 11027705, at *3 (S.D. Fla. 2019) (conditionally certifying collective with only 2 opt-ins); *Brasaus v. Freshpoint of*

---

[4] Plaintiffs have provided enough evidence to "elevate [the] plaintiffs' allegations beyond mere speculation" because they have identified other employees who desire to join in their declarations. *See Wickles*, 2020 WL 12309029, at *2; *see also* Exhibit A; Exhibit B.

[5] Defendants have retaliated against employees who have sought unpaid wages in the past. *See* Exhibit A at ¶ 34-35; Exhibit B at ¶ 37-38. Indeed, Defendants have completely removed individuals from their schedule for requesting unpaid wages. *Id.*

*South Florida, Inc.*, Case No. 15-cv-61529, 2016 WL 7469979 at *1 (S.D. Fla. Feb. 11, 2016) (S.D. Fla. Feb. 11, 2016) (Dimitrouleas, J.) (granting conditional certification with two opt-ins having submitted declarations); *Garcia v. J&J, Inc.*, 2019 WL 3457613 at *3 (S.D. Fla. July 31, 2019) ("[c]ourts in this district have conditionally certified classes with as few as two affidavits from potential Plaintiffs") (quoting *Rojas v. Garda CL Se., Inc.*, 297 F.R.D. 669, 677 (S.D. Fla. 2013)) (emphasis added); *Wynder v. Applied Card Sys., Inc.*, No. 09-80004, 2009 WL 3255585 (S.D. Fla. Oct. 7, 2009) (granting conditional certification of FLSA collective action based on two affidavits: one of the single-named plaintiff and one opt-in plaintiff); *Harapeti v. CBS Telivision Stations, Inc.*, No. 20-cv-2096, 2020 WL 8083695 (S.D. Fla. Dec. 21, 2020) (granting conditional certification when 3 employees opted into lawsuit); *Rosell*, 2020 WL 7767879, at *3 (granting conditional certification of FLSA collective action when there were only two (2) opt-in class members); *Teahl v. The Lazy Flamingo, Inc.*, No. 2:13-cv-833-FTM-38CM, 2015 WL 179367, at *6 (M.D. Fla. Jan. 14, 2015 ("Upon consideration of the lenient standard, two opt-in plaintiffs, and … declaration, there is a reasonable basis to believe that there are other employees who may desire to opt-in"); *See Robinson v. Sailormen, Inc.*, 2016 WL 11528450, at *5 (N.D. Fla. Nov. 18, 2016) (Judge Walker explaining that "variations in specific duties, job locations, working hours, or the availability of various defenses" are not considered at the conditional certification stage); *Wallace*, 2017 WL 6994565, at *3 (holding that Defendants' argument that conditional certification should be denied because the employees were paid different amounts and had different duties was "unpersuasive"); *Allen v. Hartford Fire Ins. Co.*, 2017 WL 3701139, at *24, n.11 (M.D. Fla. Aug. 25, 2017) (explaining that the focus at the first stage of conditional certification is not whether there has been an actual violation of law, but whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated) (citations omitted); *Roldan*, 2011 WL 13223731 at *3 (holding that merits arguments should be raised in a motion for decertification following discovery of a motion for summary judgment and not at the notice stage).

## V. NOTICE: SCOPE, FORM AND DISTRIBUTION

### A. All Servers and Bartenders Employed by Defendants Within the Past 3 Years Should Receive Notice

The FLSA allows employees to collect damages within a three-year limitations period if they can show, as alleged in the Amended Class/Collective Action Complaint, that an employer's FLSA violation was "willful." *McLaughlin v. Richard Shoe Co.*, 486 U.S. 128, 133 (1988);

*McClean*, 2018 WL 8578016, at *4 (approving 3-year notice). Accordingly, notice should be provided to all Servers and Bartenders employed by Defendants during the past 3 years. *Didoni*, 327 F.R.D. at 482 (Judge Altonaga approving 3-year notice).

### i. Discovery and Notice Should be Expedited

The limitations period applicable to other putative class members continues to run until they opt-in to this case or file their own lawsuit. *See* 29 C.F.R. § 790.21(b)(2)(ii). As a result, the early data requested is time sensitive, both to ensure that putative class members are afforded an opportunity to timely preserve their rights, and to facilitate efficient and swift litigation. Accordingly, Plaintiffs request that the Court enter an Order expediting the notice and the discovery processes relating to this Motion for Conditional Certification.

In *Hoffman-La Roche, Inc.*, the Supreme Court ruled that district courts are authorized to compel employers to provide names and addresses of potential Plaintiffs through the pretrial discovery process. 493 U.S. 165 (1989). The Supreme Court also held that this authority includes sending court-authorized consent forms to potential Plaintiffs. *Id.* Court authorization of notice serves the legitimate goals of avoiding a multiplicity of duplicative suits and of setting cutoff dates to expedite disposition of the action. *Id.* at 487. As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to facilitate notice. *See Hoffman-La Roche, Inc.*, 493 U.S. at 165; *see also Dean v. W. Aviation, LLC*, 2018 WL 1083497 at *3 (S.D. Fla. 2018) (expedited discovery from defendants, consisting of names, addresses, and e-mail addresses of all individuals within the class was "reasonable and necessary to provide appropriate notice to all potential opt-in plaintiffs").

Here, Plaintiffs seek expedited discovery production from the Defendants, within 10 calendar days of the Court's order granting this Motion, of a complete list of all Servers and Bartenders—including their full names, last known home address and last known e-mail address— who were ever employed by Defendants at any time within the previous three (3) years. The data sought here has been required by this Honorable Court. *See Didoni*, 327 F.R.D. at 482 (quoting the following from *Kirk v. Dr. Goodroof, Inc.*, 2015 WL 1138445, at *4: "[t]o the extent Defendants are in possession of such information, they must provide Plaintiff[s] with a list of putative class members' names, addresses, and e-mail addresses."); *see also Laos v. Grand Prize Motors, Inc.*, 2012 WL 718713 at *2 (S.D. Fla. 2012) (requiring defendants to produce to Plaintiff, within 15 days of conditional certification order, a complete list of all putative class members,

including their last known home address, telephone number, e-mail addresses, and the last four digits of the social security number, taxpayer ID number, and financial account numbers, of employees); *Garcia*, 2019 WL 3457613 at *6 (ordering defendants to produce Excel spreadsheet containing names of all individuals who worked for defendants, along with each person's last known address and e-mail address, within 10 calendar days of the order approving conditional certification).

ii. **Proposed Court Approved Notice to Members of the Collectives**

A copy of the proposed notice is attached hereto as **Exhibit C.** Plaintiffs' proposed notice is "timely, accurate, and informative." *See Hoffman-La Roche, Inc.*, 493 U.S. at 172. As such, the proposed notice achieves the ultimate goal of providing accurate and timely notice to employees concerning the pendency of the collective action, and should be adopted. Plaintiffs seek to provide e-mail and physical mailing of the notice via first class U.S. Mail with a self-addressed stamped envelope for members of the putative Collectives to submit their consent forms. *See Van Lehn*, S.D. Fla. Case No. 0:22-cv-61628-AHS at D.E. 28 (Judge Singhal approving substantially similar notice and permitting mail and email notice); *see also Grajeda*, S.D. Fla. Case No. 0:22-cv-61471-WPD at D.E. 18 (Judge Dimitrouleas approving substantially similar notice and permitting mail and email notice); *Martinez*, 2016 WL 455394 at *9 (permitting e-mail notice **and** notice via first class mail with a pre-addressed and stamped return envelope); *Wintjen,* 2021 WL 5370047 at *19 ("providing servers with electronic notice is especially important given the high turnover rate of employees in the restaurant industry").

Plaintiffs also contend there are non-public spaces at the restaurant accessible by Servers and Bartenders where Defendants could display notice of this lawsuit. *See* Exhibit A, at ¶36; Exhibit B, at ¶39. Plaintiffs seek an Order from this Court requiring Defendants to conspicuously display Plaintiffs' Proposed Notice and Consent to Join Forms notifying all current Servers and Bartenders of this lawsuit and their opportunity to join, and further requiring Defendants to file a Notice of Compliance with an attached photograph showing that the notice has been conspicuously posted. *See* Proposed Posting for Restaurant attached as Exhibit D; *see also Didoni*, 327 F.R.D. at 481-82 ("It is not unusual for a court to require an FLSA defendant to post the Notice and Consent in its break/lunch room or another place where the employees regularly gather."). Putative members of each collective will ostensibly visit the undersigned law firm's website when they receive mail and email notice. Therefore, Plaintiffs seek leave to display the same notice on their

counsel's website to "facilitate swift and economic justice." *See Qiang.* 447 F.Supp.3d at 97 (permitting Plaintiff's counsel to post notice on its website); *see also* Exhibit D.

Assuming the Court orders Defendants to produce the Class Member contact list within 10 calendar days, Plaintiffs request a total of 110 calendar days from the date the Court grants conditional certification for class members to submit their Consents to Join to Plaintiffs' Counsel (to allow 10 days for Defendants to furnish a comprehensive list of putative class information, 10 days for Plaintiffs' Counsel to prepare the notices to be sent, and an additional ninety 90 days for class members to submit their Consents to Join). *See Flete*, 2020 WL 5534270, at *4 (allowing 90-days to opt-in from the date Notice was sent); *Alequin*, 2013 WL 3939373, at *8 (Judge Rosenbaum explaining that "Common practice provides an opt-in period of ninety days …"); *Robinson*, 2016 WL 11528450, at *8 ("This Court has previously granted a ninety-day opt-in period."); *Pittman*, 2013 WL 525006, at *2 (M.D. Fla. 2013) (court ordered 90-day notice period).

Finally, Plaintiffs seek leave to send a reminder notice at the half-way point in the notice period. *See* Exhibit E. Other courts have granted similar requests for reminder notices to ensure putative class members are aware of their rights and the time within which to exercise same. *See McClean*, 2018 WL 8578016, at *4 (permitting reminder notice at half-way point); *Martinez*, 2016 WL 455394 at *9 (allowing reminder postcard 30 days after the notice was approved); *Camano v. 7 Call Center Inc.*, 2016 WL 4704934 (S.D. Fla. 2016) (follow-up reminder permitted); *Wright*, 2020 WL 8641581, at *7 (allowing reminder notice at half-way point).

V. **CONCLUSION**

**WHEREFORE**, Plaintiffs, VIKTORIIA POPOVA and DARA LAMDEN, respectfully request that this Honorable Court grant the instant motion and provide the relief set forth within the attached Proposed Order.

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS - JORDAN RICHARDS, PLLC**
1800 SE 10th Ave. Suite 205
Fort Lauderdale, Florida 33316
(954) 871-0050
*Counsel for Plaintiffs*

By: /s/ *Jake S. Blumstein*
JORDAN RICHARDS, ESQ.
Fla. Bar No. 108372
JAKE S. BLUMSTEIN, ESQ.

Fla. Bar No. 1017746  
jordan@jordanrichardspllc.com  
jake@jordanrichardspllc.com  
catherine@USAEmploymentLawyers.com

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the foregoing motion was filed through CM/ECF this 16th day of December 2022 and served on the parties listed below via CM/ECF.

By: */s/ Jake S. Blumstein*  
JAKE S. BLUMSTEIN, ESQ.  
Fla. Bar No. 1017746

## **SERVICE LIST**

**PAUL F. PENICHET, ESQ.**  
Fla. Bar No. 899380  
Paul.penichet@jacksonlewis.com  
**ADAM SCHULTZ, ESQ.**  
Fla. Bar No. 121111  
Adam.schultz@jacksonlewis.com  
**JACKSON LEWIS P.C.**  
*Counsel for Defendants*  
One Biscayne Tower  
Two South Biscayne Blvd. Suite 3500  
Miami, FL 33131  
Tel: (305) 577-7655